UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00191-RJC

| | |
|---|---|
| LILLIE COMPTON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motions for Extension of Time to Answer Complaint, (DEs 6, 8), and the Parties' Cross Motions for Summary Judgment. (DEs 11, 12). Having fully considered the written arguments, administrative record, and applicable authority, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** this matter for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff Lillie Compton ("Compton") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Compton filed her application for disability insurance benefits on April 17, 2017, with an alleged onset date of March 25, 2013. (Tr.[1] 15).

In denying Compton's social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 15–32). At step one, the ALJ found that Compton had not engaged in substantial gainful activity since the alleged onset date. *Id.* at 18. At step two, the ALJ found that Compton

---

[1] Citations to "Tr." throughout the order refer to the administrative record at DE 10.

had the following combination of severe impairments: chronic obstructive pulmonary disease ("COPD"), Crohn's disease, fibromyalgia, chronic fatigue syndrome ("CFS"), and degenerative disc disease ("DDD"). *Id.* The ALJ also found that Compton had the following combination of non-severe impairments: asthma/bronchitis, gastroesophageal reflux disease ("GERD"), hypertension, migraines, and fatty liver. *Id.* At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. *Id.* at 20. Before moving to step four, the ALJ found that Compton had the residual functional capacity ("RFC") to perform light work as explained below:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFC 404.1567(b) and 416.967(b). In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks. The claimant cannot climb ladders, frequently climb steps, balance, crouch and kneel, occasionally stoop, and crawl, and she must avoid concentrated exposure to respiratory irritants, cold, heat, humidity and hazards.

*Id.* at 21. At step four, the ALJ found that Compton could not perform any past relevant work, but found at step five that Compton could perform jobs that existed in significant numbers in the national economy, such as an office helper (48,000 jobs), order caller (12,000 jobs), and marker (130,000 jobs). *Id.* at 31.

After exhausting her administrative remedies, Compton brought the instant action for review of Defendant's decision denying her application for disability insurance benefits under Title II, of the Social Security Act. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III.  DISCUSSION OF CLAIM

Compton argues that the ALJ erred by (1) failing to properly weigh the medical opinion of

Dr. Mault, Compton's treating physician; (2) by applying the incorrect legal standard in evaluating the medical opinion of Mr. Perea, a nurse practitioner who treated Compton; and (3) by failing to give proper weight to Compton's subjective evidence of fibromyalgia in light of SSR 12-2p. (DE 11-1). In response, Defendant argues that the ALJ's decision was proper and that *res judicata* bars a disability onset date earlier than December 16, 2015. (DE 13). The Court grants remand based on Plaintiff's second challenge concerning the medical opinion of Mr. Perea.

Mr. Perea is a nurse practitioner who saw Compton "every three-to-four weeks," "diagnosed Compton with Crohn's disease, irritable bowel syndrome, and gastroesophageal reflux disease," and "knew Compton's medical history." (Tr. 1243). As a treating medical provider who personally evaluated Compton, Mr. Perea found that because of her conditions "Ms. Compton would probably have to rest away from the work station for more than an hour per workday if she attempted to work on an 8-hour day, 5-day per week basis" and that "[d]ue to the number and length of toilet breaks that she would need, Ms. Compton would be interrupted from working on work-related tasks for more than 15% of the working portion of the workday." *Id.*

In evaluating Mr. Perea's medical opinion, the ALJ found:

> I find that Mr. Perea is not an acceptable medical source pursuant to the requirements of 20 CFR §404.1513(a) and §4l6.913(a). Thus, he cannot provide a legally acceptable medical opinion concerning disability. However, he is considered another source whose information may help me understand how the claimant's impairment affects her ability to work. See 20 CFR § 404.1513(d), 416.913(d) and SSR 06-03p. Consequently, I fully considered Mr. Perea's conclusions regarding the claimant's functional limitations and found them not persuasive as specialized medical evidence.

(Tr. 29–30). The ALJ then explained how Mr. Perea's non-medical opinion was "neither inherently valuable nor persuasive" as it appeared to be "heavily reliant on the claimant's subjective reports, rather than objective and diagnostic test findings." *Id.*

For applications filed after March 27, 2017, like Compton's application, nurse practitioners

4

are considered "acceptable medicals sources." 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017). The ALJ was thus required to evaluate Mr. Perea's opinion as a medical opinion. The ALJ failed to do so. Defendant admits this was in error, but argues the error was harmless. A harmless error is one that would not have led to a different result. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result"); *Garner v. Astrue*, 436 Fed. Appx. 224, 226 (4th Cir. 2011) (applying the *Sanders* harmless-error standard in a Social Security-disability case); *Smith v. Colvin*, No. 1:12-cv-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (stating that error is harmless where remand would not lead to a different result) (citing, inter alia, *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")).

Here, the ALJ did not consider Mr. Perea a legally acceptable medical source which contravenes the Commissioner's rules. As such, the only treating medical providers that the ALJ considered as acceptable medical opinions were Dr. Mault and Dr. Burgess. The ALJ found Dr. Burgess persuasive but found Dr. Mault—who opined like Mr. Perea that Compton's limitations would have prevented her from working—unpersuasive. It is unclear whether the ALJ's decision would have been the same had he correctly analyzed Mr. Perea's medical opinion as this would have required the ALJ to find the opinions of two out of the three treating medical providers unpersuasive. *Compare Connie M. v. Kijakazi*, No. 3:20-cv-00703 (JAG), 2022 U.S. Dist. LEXIS 27334, at *18–22 (E.D. Va. Jan. 10, 2022) (affirming decision where ALJ analyzed a nurse practitioner's opinion as a medical opinion), *with Hayes v. Kijakazi*, No. 1:20-cv-00040-MR, 2021 U.S. Dist. LEXIS 187696, at *17–20 (W.D.N.C Sept. 30, 2021) (remanding decision where ALJ

5

rejected GAF[2] scores from a nurse practitioner because the ALJ wrongly concluded that the scores did "not come from acceptable medical sources"). Accordingly, the ALJ applied the incorrect standard in analyzing Mr. Perea's opinion which prevents the Court from conducting meaningful review. Such error cannot be harmless and remand is appropriate. *See, e.g.*, *Sunderman v. Colvin*, No. 4:16-CV-04003-KES, 2017 U.S. Dist. LEXIS 15155, at n.8 ("Because the ALJ applied an incorrect standard here, the ALJ's error cannot be harmless.").

By ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not forecast a decision on the merits of Plaintiff's application for disability benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)).

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motions for Extension of Time to Answer Complaint, (DEs 6, 8), are **GRANTED**;

2. Plaintiff's Motion for Summary Judgment, (DE 11), is **GRANTED**;

3. Defendant's Motion for Summary Judgment, (DE 12), is **DENIED**; and

4. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

---

[2] "A GAF score represents a clinician's judgment of an individual's overall level of functioning." *Kennedy v. Colvin*, No. 3:14-CV-665-RJC, 2016 U.S. Dist. LEXIS 29542, 2016 WL 890602, at *3 (W.D.N.C. Mar. 8, 2016) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000)).

6

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: March 7, 2022

Robert J. Conrad, Jr.
United States District Judge